Daniel C. Peterson, OSB No. 064664
e-mail: dpeterson@cosgravelaw.com
Amber A. Beyer, OSB No. 173045
e-mail: abeyer@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone:    (503) 323-9000
Facsimile:    (503) 323-9019

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RAYMOND BALL, an individual, and JOSEPH TOTH, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW CARSON, an individual, WILLIAM CARSON, an individual, TERRANCE THURBER, an individual, THOMAS THURBER, an individual, DG ROLLINS MINING, LLC, a Wyoming limited liability company, COLUMBIA GORGE DATA CENTERS LTD, a Nevada corporation, WHC & SWC INVESTMENTS, LTD, a Texas limited partnership, INTELLIGENT INVESTMENTS, LLC, a Texas limited liability company, and SNICKERS #1, LLC, a Texas limited liability company,<br><br>Defendants, | Case No.<br><br>COMPLAINT<br><br>(Declaratory Judgment, Fraudulent Transfer, Piercing the Corporate Veil, Deceit by Misrepresentation, Civil Conspiracy)<br><br><u>Demand for Jury Trial</u> |

Plaintiffs Raymond Ball and Joseph Toth, through the undersigned counsel, respectfully

submit this Complaint against Defendants Matthew and William Carson, Terrance and Thomas

Thurber, DG Rollins Mining, LLC, (d.b.a. Oregon Mines) ("**DG Rollins**"), Columbia Gorge

Data Centers, Ltd (d.b.a. Oregon Mines) ("**Columbia Gorge**"), WHC & SWC Investments, Ltd.

Page 1 -   **COMPLAINT**

("**WSI**"), Intelligent Investments, LLC ("**Intelligent Investments**") and Snickers #1, LLC

(collectively, "**Defendants**").  In support thereof, Plaintiffs state the following:

## THE PARTIES

1.     Plaintiffs are individual residents of Alberta, Canada, who consent to the

jurisdiction of this Court.

2.     This action seeks to collect a money judgment Plaintiffs obtained against Miner

Hosting, LLC ("**Miner Hosting**"), in an Adams County, Colorado case captioned: *Ball, et al., v.*

*Miner Hosting, LLC*, 2016 cv 30222 (the "**Original Lawsuit**").  The pleadings of the Original

Lawsuit are attached hereto and incorporated by reference.

3.     Miner Hosting operated a data center in Adams County, Colorado at 3250

Oakland Street, Unit D, Aurora, Colorado 80010 (the "**Data Center**") before relocating its assets

and business operations to a new data center in The Dalles, Oregon (the "**Oregon facility**")

sometime in 2014.

4.     Mr. Matthew Carson, at all relevant times herein, is a resident of Colorado and a

member of Miner Hosting who, through various acts described below, routinely directed contact

toward Miner Hosting's operations and assets in Oregon.

5.     Mr. William Carson is Matthew's father and a resident of Texas who, through

various acts described below, routinely directed his conduct towards Miner Hosting and its assets

in Oregon.

6.     Intelligent Investments, Snickers #1 and WSI are Texas entities wholly owned

and operated by William Carson and his immediate family (the "**Carson Entities**").  According

to public records, WSI, is a wholly-owned subsidiary of Intelligent Investments.  Upon

information and belief, the Carson Entities routinely comingle their assets and their comingled

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

assets are all treated as if they were the property of Carson family. Through various acts described below, each of the Carson Entities has directed its conduct towards Miner Hosting and its assets in Oregon.

       7.     Messrs. Thomas and Terrance Thurber are father and son. Each of them is further a resident of Oregon.

       8.     DG Rollins is a Wyoming limited liability company with its principal place of business in Oregon.

       9.     Columbia Gorge is a Nevada corporation with its principal place of business in Oregon.

       10.    The legal claims in this Complaint revolve around conduct performed in and around the Oregon Facility in The Dalles, Oregon.

<b>JURISDICTION AND VENUE</b>

       11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, and the Court may exercise personal jurisdiction over each defendant.

       12.    Venue in this Court and division is also proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in The Dalles, Oregon.

<b>BITCOIN MINING</b>

       13.    The facts of this case revolve around Bitcoin miners, specialized computers used to obtain Bitcoin by continually processing, or "mining," a decentralized digital ledger known as

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

the blockchain.[1]   To ensure optimal performance, miners are frequently hosted in data centers where they can be professionally maintained and the costs of mining (electricity, cooling, etc.) can be defrayed by several parties, each benefiting from economies of scale.

## FACTUAL BACKGROUND

14.     In September 2013, Matthew Carson and Daniel Murtha organized Miner Hosting in Rollo, Missouri.  During its year and a half of operations, Miner Hosting operated under the d.b.a. "Miner Source" and made money by:

a)      Selling miners on its website, www.minersource.net;

b)      hosting third-party miners for a fee; and

c)      using company-owned miners to generate Bitcoin.

15.     In December 2013, Miner Hosting opened the Data Center in Aurora, Colorado. The Data Center thereafter served as Miner Hosting's base of operations and housed hundreds of miners owned by Miner Hosting and its customers.

16.     After the relocation, Daniel's mother, Donna, and Matthew's father, William, invested in Miner Hosting.  William Carson made his investment through WSI.  After these investments, Miner Hosting's membership became:

| | |
|---|---|
| William Carson (via WSI) | 45% |
| Matthew Carson | 35% |
| Donna Murtha | 15% |
| Daniel Murtha | 5% |

---

[1] For additional background, see J. Kirkland *Here's What You Actually Need to Know About Bitcoin*, Esquire, Dec. 27, 2017; N. Popper, *What Is Bitcoin, How Does it Work?* New York Times, Oct. 1, 2017; and Investopedia's Blockchain summary.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

17.    Miner Hosting received income in Bitcoin and U.S. Dollars.  Bitcoin income was stored in wallet files physically kept at the Data Center (the "**Wallets**"),[2]  and Dollar income was deposited into one of Miner Hosting's bank accounts at Bank of America or Wells Fargo.

18.    While it was operational, Miner Hosting acquired a number of valuable assets, including:

a)    Lease rights in one or more oil wells worth roughly $45,000 (the "**Oil Leases**");

b)    a $25,000 engraver used to make physical Bitcoins (the "**Engraver**"),[3]  and

c)    roughly 100 Bitcoin miners, installed in the Data Center and used to generate Bitcoin (the "**Miners**").

19.    The Bitcoin generated by the Miners was deposited in the Wallets at regular intervals.

**A.    The Oregon Facility**

20.     In December 2013, Terrance Thurber used an entity named Direct Investments, S.C., to purchase a large number of miners, and paid Miner Hosting to host them in the Data Center.  Through this transaction, and others, the Thurbers and the Carsons developed a cordial business relationship.

21.    At the time, the Thurbers were looking to build a new data center in The Dalles, Oregon, and encouraged Miner Hosting to join them.  Sometime in 2014, Miner Hosting agreed to relocate to the Oregon Facility when it was built, and contributed some $25,000 towards its construction.

---

[2] To spend Bitcoin, one needs a secret number known as the "private key."  Private keys are frequently kept in electronic wallet files, which are sometimes taken offline to avoid hacking.  Offline files are called "cold wallets."
[3] By engraving private keys on novelty coins, making a cold wallet of sorts.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

22.    With Miner Hosting committed, the Thurbers incorporated DG Rollins and set out to build the Oregon Facility, with a completion target in late 2014.  At time, Terrance Thurber was DG Rollins only owner and Thomas Thurber, its C.F.O., ran the day-to-day operations.

**B.    The Preorders**

23.    In the interim, Miner Hosting continued its operations in Colorado and began preselling the "Prospero X3," a miner developed by a Chinese manufacturer named Black Arrow and set for public release in May 2014.

24.    In early 2014, Miner Hosting presold hundreds of X3s to dozens of customers including Plaintiffs, who paid $200,000 for 43 X3s on April 18, 2014.

25.    Per the terms of their preorder, Plaintiffs were entitled to a full refund if their X3s were not delivered by May 2014 (the "**Refund**").  Upon information and belief, each preorder was subject to similar terms: the customer prepaid and was entitled to a full refund if their X3s were not delivered by May 2014.

26.    Despite its significant presale revenue, Miner Hosting failed to set a cash reserve to pay the refunds.  Due to a defect in the manufacturing process, Black Arrow failed to deliver the X3s by the May deadline, triggering the refund obligation in each preorder and rendering Miner Hosting insolvent as of June 1, 2014.

27.    Unable to pay, Miner Hosting asked its customers to wait on Black Arrow and promised to compensate them for their delay-related losses.  Relying on this promise, Plaintiffs and several other customers refrained from demanding an immediate refund.

28.    Black Arrow made a handful of X3 shipments in June and July, but stopped in August claiming Miner Hosting owed it some $500,000 in unpaid invoices.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

C.      **The Buyout & Bitcoin Transfers**

29.     On October 17, 2014, the Murthas sold their membership interests to WSI and Daniel Murtha returned to St. Louis, leaving the Carsons in complete control of Miner Hosting (the "**Buyout**").

30.     After the Buyout, Matthew Carson started to deplete Miner Hosting's Bitcoin reserves by transferring Bitcoin out of the Wallets and into a series of accounts controlled, upon information and belief, by WSI (the "**Bitcoin Transfers**").  The Bitcoin Transfers occurred between late October 2014 and January 2015, and resulted in an outflow of several hundred Bitcoin worth some $100,000 at the time of their transfer.

31.     Upon information and belief, all of the Bitcoin Transfers were completed with an intent to defraud Miner Hosting's creditors, and none of them involved an exchange of reasonably equivalent value.

D.      **The Merger & Asset Transfers**

32.     In November and December 2014, the remaining X3 customers lost their patience and began emphatically demanding their refunds.  In Plaintiffs' case, Mr. Ball made an unequivocal refund demand on November 24, 2014, and Mr. Toth made a similar demand on December 23, 2014.

33.     Unwilling to pay these demands, the Carsons resolved to abandon Miner Hosting, and its debts, by absconding with its assets and transferring its still profitable hosting business to the Oregon Facility, which was nearing completion and counting on Miner Hosting to relocate.

34.     To this end, the Carsons conspired with the Thurbers and the parties entered a formal, but secret, agreement to merge the companies in three steps:

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

a)      Miner Hosting, or its proxy, would pay $150,000 for a 25% ownership stake in DG Rollins;

b)      DG Rollins would hire Miner Hosting's only two employees: Matthew Carson and Thomas Salvatore, and

c)      the companies would take all logistical steps necessary to relocate Miner Hosting's operations to the Oregon Facility (the "**Merger Agreement**").

35.      When they entered the Merger Agreement, the Thurbers were aware of Miner Hosting's debts, but nevertheless chose to absorb Miner Hosting so DG Rollins could obtain the pecuniary gain that resulted from it.  At the time of the merger, Miner Hosting and its customers comprised all of DG Rollins' business.

36.      On February 19, 2015, the Carsons used Intelligent Investments (WSI's parent company) to wire $150,000 to DG Rollins, and Terrance Thurber assigned 25% of DG Rollins' membership interests to Snickers #1, a Carson Entity owned by William Carson, Matthew Carson, and William's wife, Susan (the "**Equity Transfer**").

37.      Upon information and belief, Intelligent Investments' $150,000 wire represented value the Carsons took out of Miner Hosting and funneled through the Carson Entities via the illicit transfers described in this Complaint.

38.      After the Equity Transfer, the parties relocated Miner Hosting's customers and valuable infrastructure assets to the Oregon Facility—without compensating Miner Hosting for either transfer—and moved Messrs. Carson and Salvatore to The Dalles, where they took up residence and began new jobs as "Vice Presidents" of Oregon Mines.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

39.     Parallel with the companies' merger, the Carsons pilfered the rest of Miner Hosting's assets by transferring the Oil Leases' legal title to WSI, and physically absconding with the Miners, the Engraver, and other assets unknown (the "**Asset Transfers**").

40.     Upon information and belief, the Miners were relocated to the Carson's hometown of Dallas, Texas, where they were installed and used to generate Bitcoin for the Carsons and their Companies.  At the time of their relocation, the Miners had an estimated value of $100,000.

**E.      The Original Lawsuit**

41.     In 2016, Plaintiffs filed the Original Lawsuit against Miner Hosting and DG Rollins.  Miner Hosting defaulted, but DG Rollins appeared and denied its role as Miner Hosting's successor-in-interest.

42.     In discovery, Mr. Thurber admitted to hiring Messrs. Carson and Salvatore, but falsely denied a merger and hid several key documents that would have revealed the merger and Snickers #1's role as straw buyer.

43.     Relying upon Mr. Thurber's misrepresentations, and unaware of his concealments, Plaintiffs dismissed DG Rollins from the Original Lawsuit without prejudice, and obtained a judgment against Miner Hosting in the amount of $263,504.62 (the "**Judgment**").

44.     In October 2017, Plaintiffs obtained several documents from a third-party source and, after investigating these documents, realized DG Rollins' Dismissal had been fraudulently obtained.

45.     In April 2018, after informal settlement offers were brushed off, Plaintiffs filed a still pending Motion for sanctions against DG Rollins in the Original Lawsuit, and now file this action to recover from all Defendants.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

46.     In 2017, Columbia Gorge became DG Rollins' successor-in-interest by taking possession of the Oregon Facility and assuming of all of DG Rollins' assets and liabilities, including the d.b.a. "Oregon Mines."  Upon information and belief, the owners and employees of Columbia Gorge and DG Rollins were identical at the time of transfer.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment–Successor Liability)
### DG Rollins & Columbia Gorge (d.b.a. Oregon Mines)

47.     Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

48.     In June 2014, Miner Hosting became insolvent after it incurred substantial liabilities to Black Arrow, Plaintiffs and other sales customers.

49.     To avoid these liabilities, the Carsons, the Thurbers and their companies implemented the Merger Agreement, pursuant to which Miner Hosting's owners became owners of DG Rollins, and Miner Hosting's customers, employees, and assets were all absorbed by DG Rollins.

50.     Miner Hosting was not adequately compensated for the foregoing transfers, all of which were surreptitiously undertaken to avoid Plaintiffs and other creditors.

51.     As a direct result of the foregoing conduct, Plaintiffs were unable to collect the Refund or the Judgment, and sustained damages.

52.     In 2017, Columbia Gorge became DG Rollins' successor-in-interest by taking possession of the Oregon Facility and assuming of all of DG Rollins' assets and liabilities, including the d.b.a. "Oregon Mines."  DG Rollins and Columbia Gorge have the same employees and owners.

THEREFORE, Plaintiffs are entitled to an equitable order declaring DG Rollins and Columbia Gorge Miner Hosting's legal successors-in-interest pursuant to the *de facto* merger,

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

mere continuation and fraud exceptions to the rule against successor liability, and holding them liable for Miner Hosting's debts and legal obligations, including the Judgment, as if they were Miner Hosting.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Transfer, O.R.S. Ch. 95, *et seq.*)
### The Carsons & The Carson Entities

53.     Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

54.     In June 2014, Miner Hosting became insolvent after it incurred substantial liabilities to Black Arrow, Plaintiffs and other sales customers.

55.     To avoid these liabilities, Matthew Carson moved at least $100,000 in Bitcoin assets from Miner Hosting to WSI via the Bitcoin Transfers in late 2014.  Some portion of these funds were later funneled to Intelligent Investments and used to complete the Equity Purchase.

56.     The Carsons thereafter depleted the rest of Miner Hosting's assets by completing the Asset Transfers, which moved valuable assets worth at least $170,000 out of Miner Hosting and into the custody of the Carsons and their Companies.

57.     All of the foregoing transfers were completed while Miner Hosting was insolvent, with an express intent to defraud Miner Hosting's present and future creditors, and none of these transfers were based upon an exchange of reasonably equivalent value.

58.     Because the Bitcoin and Asset Transfers were made to the Carsons, or an entity they controlled, none of the foregoing transfers were made to a *bona fide* purchaser, and each recipient acted with intent to defraud under O.R.S. § 95.230.

59.     Matthew and William Carson both benefited from the Bitcoin and Asset Transfers by retaining control of the transferred assets directly, or indirectly through the Carson Entities and Snickers #1's ownership stake in DR Rollins.

Page 11 - **COMPLAINT**

60.     As a direct result of the foregoing conduct, assets belonging to Miner Hosting
were concealed and unavailable to pay the Refund or the Judgment, causing Plaintiffs to sustain
damages.

THEREFORE, the Carsons and the Carson Entities have violated various provisions of
Oregon's Uniform Fraudulent Transfer Act, O.R.S. §§ 95.200, *et seq*., and are liable to Plaintiffs
for damages in an amount to be determined at trial, but not less than the value of each
fraudulently transferred asset they received plus statutory damages, all awardable costs and
attorney's fees, and interest accrued from the date of transfer forward.

### THIRD CLAIM FOR RELIEF
### (Fraudulent Transfer, O.R.S. § 95.230, *et seq*.)
### DG Rollins & Columbia Gorge (d.b.a. Oregon Mines)

61.     Plaintiffs incorporate all prior allegations and averments as if they were fully set
forth below.

62.     In June 2014, Miner Hosting became insolvent after it incurred substantial
liabilities to Black Arrow, Plaintiffs and other sales customers.

63.     To avoid these liabilities, Miner Hosting and DG Rollins entered into and
implemented the Merger Agreement and transferred all of Miner Hosting's customers,
infrastructure assets, and employees to the Oregon Facility, where they were absorbed by DG
Rollins.

64.     DG Rollins further received a substantial portion of Miner Hosting's capital assets
via the Equity Transfer.

65.     Miner Hosting was not compensated for the value of the foregoing transfers, all
of which were surreptitiously undertaken with the express intent of avoiding Miner Hosting's
creditors.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

66.    At the time of each transfer, the Thurbers were aware of Miner Hosting's debts and wished to assist Miner Hosting in its efforts to escape its creditors.  Accordingly, none of the merger-related transfers were made to a *bona fide* purchaser and DG Rollins acted with intent to defraud under O.R.S. § 95.230.

67.    As a direct result of the Asset Transfers, assets belonging to Miner Hosting were concealed and unavailable to pay the Refund or the Judgment, causing Plaintiffs to sustain damages.

68.    In 2017, Columbia Gorge became DG Rollins' successor-in-interest by taking possession of the Oregon Facility and assuming of all of DG Rollins' assets and liabilities, including the d.b.a. "Oregon Mines."  DG Rollins and Columbia Gorge have the same employees and owners.

THEREFORE, DG Rollins has violated various provisions of Oregon's Uniform Fraudulent Transfer Act, O.R.S. §§ 95.200, *et seq.* and, as a result, DG Rollins and its successor, Columbia Gorge, are liable to Plaintiffs for damages in an amount to be determined at trial, but not less than the value of each fraudulently transferred asset DG Rollins received plus statutory damages, all awardable costs and attorney's fees, and interest accrued from the date of transfer forward.

**FOURTH CLAIM FOR RELIEF**
**(Piercing the Corporate Veil)**
**The Carsons & The Carson Entities**

69.    Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

70.    The Carson Entities are all owned, controlled and operated by William Carson and his immediate family.  The assets of the Carson Entities are frequently intermingled, and all

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

of these intermingled assets are generally treated as the personal property of William Carson and his family.

71.    In October 2014, the Carsons obtained complete control of Miner Hosting via the Buyout.  At the time of the Buyout, Miner Hosting was insolvent and owed significant debts to Black Arrow, Plaintiffs and other customers.

72.    Instead of paying these debts, the Carsons used their control over Miner Hosting and the Carson Entities to abscond with Miner Hosting's assets by completing the Asset and Bitcoin Transfers, and funneling them through the Carson Entities in the manner described above.

73.    Through this conduct, the Carsons were able to retain control of Miner Hosting's assets at the expense of Plaintiffs and other creditors, and were further able to obscure the true nature of these transactions by completing them behind the opaque veil of Carson Entities.

74.    Such conduct represents a fraudulent abuse of the corporate form, as well as an impermissible unity of interests between the Carsons and the Carson Entities, which operated as instrumentalities of fraud and are little more than *alter egos* for William Carson and his family.

THEREFORE, Plaintiffs are entitled to an equitable order piercing the corporate veil of Miner Hosting and holding Matthew Carson, William Carson and the Carson Entities liable for Miner Hosting's debts, including the Judgment, and further piercing the veil of the Carson Entities to hold Matthew and William Carson liable for the damages associated with any claim set forth in this Complaint and proven against one or more of the Carson Entities at trial.

### FIFTH CLAIM FOR RELIEF
#### (Deceit by Misrepresentation & Concealment)
#### Mr. Thomas Thurber, DG Rollins & Columbia Gorge (d.b.a. Oregon Mines)

75.    Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

Page 14 - **COMPLAINT**

76.    During the Original Lawsuit, Mr. Thurber concealed the merger described above by falsely stating, *inter alia*, DG Rollins had not absorbed Miner Hosting nor assumed any of its customers or assets.

77.    Mr. Thurber knew these statements were false when he made them, and he made them with the express intent of convincing Plaintiffs to dismiss DG Rollins from the Original Lawsuit.

78.    Mr. Thurber further concealed the Merger Agreement by deliberately withholding several key documents from DG Rollins' disclosures, with the express intent of creating a false impression in Plaintiffs' minds.

79.    Relying on Mr. Thurber's representations and unaware of his concealments, Plaintiffs dismissed DG Rollins from the Original Lawsuit, an action they would not have taken had they known the truth.

80.    Given the circumstances, Plaintiffs' reliance was reasonable and justified.

81.    As a result of their reliance, Plaintiffs' collection efforts were substantially delayed, and Plaintiffs incurred foreseeable delay-related damages including duplicative legal fees.

THEREFORE, Mr. Thurber is liable to Plaintiffs on the theory of Deceit by misrepresentation and concealment, and is responsible for damages in an amount to be determined at trial but not less than all actual and consequential damages Plaintiffs sustained as a result of Mr. Thurber's conduct, plus reasonable interest accrued from the date of injury forward.

### SIXTH CLAIM FOR RELIEF
### (Civil Conspiracy)
### All Defendants

82.    Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

83.    In October 2014, the Carsons obtained complete control of Miner Hosting via the Buyout.  At the time of the Buyout, Miner Hosting was insolvent and owed significant debts to Black Arrow, Plaintiffs and other customers.

84.    Rather than pay these debts, the Carsons conspired to abscond with Miner Hosting's assets and furthered this conspiracy by completing the Bitcoin Transfers in 2014 and the Asset Transfers in 2015.

85.    In February 2015, the Carsons and the Thurbers entered the Merger Agreement on behalf of themselves and their companies, and therein conspired to defraud Miner Hosting's creditors by transferring Miner Hosting's capital, customers, employees and other assets to DG Rollins.

86.    On various dates thereafter, Defendants implemented this conspiracy by completing the Equity Transfer and merging the two companies in the manner described above.

87.    For various reasons stated above, this conduct violated Oregon's Uniform Fraudulent Transfer Act, O.R.S. §§ 95.200, *et seq.*, and was otherwise illegal.

88.    As a result of the foregoing conduct, Plaintiffs were unable to collect their Refund or the Judgment, and sustained damages.

89.    In 2017, Columbia Gorge became DG Rollins' successor-in-interest by taking possession of the Oregon Facility and assuming of all of DG Rollins' assets and liabilities, including the d.b.a. "Oregon Mines."  DG Rollins and Columbia Gorge have the same employees and owners.

THEREFORE, Defendants are jointly and severally liable to Plaintiffs under the theory of civil conspiracy in an amount to be determined at trial, but not less than all damages Plaintiffs sustained as a result of each Defendant's conduct in furtherance of the unlawful conspiracies

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

described above, from the date of each injury forward, and any other penalties or damages that may be allowed under applicable law.

## PRAYER

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in their favor and against each Defendant in the amounts prayed for above, along with any further and additional relief the Court may, in its sole discretion, deem just and proper.

DATED: February 18, 2019

COSGRAVE VERGEER KESTER LLP


*s/ Daniel C. Peterson*
Daniel C. Peterson, OSB No. 064664
E-mail: dpeterson@cosgravelaw.com
Amber A. Beyer, OSB No. 173045
E-mail: abeyer@cosgravelaw.com
Telephone: 503-323-9000
Fax: 503-323-9019

Attorneys for Plaintiffs

Page 17 - **COMPLAINT**