| | |
|---|---|
| DISTRICT COURT, ADAMS COUNTY<br>STATE OF COLORADO<br>1100 Judicial Center Drive<br>Brighton, Colorado 80601<br>Phone:   (303) 659-1161 | DATE FILED: February 10, 2016 6:53 PM<br>FILING ID: 2C2E713BDD210<br>CASE NUMBER: 2016CV30222 |
| **Plaintiffs:** RAYMOND BALL, an individual, and JOSEPH TOTH, an individual,<br><br>**v.**<br><br>**Defendants:** MINER HOSTING, LLC, d.b.a. MINER SOURCE, a Missouri limited liability company, and DG ROLLINS MINING, LLC, d.b.a. OREGON MINES, a Wyoming limited liability company. | ▲   COURT USE ONLY   ▲ |
| **Attorneys for Plaintiffs:**<br>Damon M. Semmens (Reg. No. 37023)<br>SEMMENS LAW, P.C.<br>1625 Broadway, Suite 1420<br>Denver, Colorado 80202<br>Phone:   (303) 861-4822<br>Fax:       (303) 860-0069<br>Email:    dms@semmenslaw.com | Case No.:<br><br>Div.:            Ctrm: |
| **COMPLAINT & JURY DEMAND** ||

Plaintiffs Raymond Ball and Joseph Toth, through the undersigned counsel, respectfully submit this Complaint against Defendants, Miner Hosting, LLC, d.b.a. Miner Source ("**Miner Hosting**"), and DG Rollins Mining, LLC, d.b.a. Oregon Mines ("**Rollins Mining**").  In support thereof, Plaintiffs state the following:

### JURISDICTION & VENUE

1. Plaintiffs are individual residents of Alberta, Canada, who consent to the jurisdiction of this Court.

2. Defendant Miner Hosting is a Missouri limited liability company with a registered principal address in Adams County, Colorado, at 3250 Oakland Street, Unit D, Aurora, Colorado 80010.

3. Defendant Rollins Mining is a Wyoming limited liability company with a principal office in the Dalles, Oregon.  For the reasons set forth below, Rollins Mining is Miner

Hosting's successor-in-interest and subject to this Court's jurisdiction as if it were, in fact, Miner Hosting.

4. The substance of this Complaint concerns liabilities in excess of $200,000 arising out of a contract performed in and around Adams County, Colorado.

5. Personal and subject matter Jurisdiction are thus properly vested in this Court pursuant to C.R.S. § 13-1-124, and venue is appropriately vested in Adams County pursuant to C.R.C.P. 98. These proceedings are likewise excepted from C.R.C.P. 16.1 because the amounts at issue exceed $100,000.

**FACTUAL BACKGROUND**

6. This Complaint concerns the sale of specialized computer servers known as "miners," which are used to obtain the electronic cryptocurrency known as Bitcoin.

7. On September 9, 2013, Miner Hosting was organized in Rollo, Missouri, by three business partners: Matthew Carson, Daniel Murtha and Thomas Salvatore. Upon information and belief, Miner Hosting was originally organized to host and manage Bitcoin miners in special facilities known as data centers.

8. Sometime in December 2013, Miner Hosting set up a large data center in Aurora, Colorado (the "**Data Center**"). The Data Center thereafter served as Miner Hosting's principal place of business and was used to host a large number of miners owned by customers who paid Miner Hosting a fee to use its facilities.

9. Around the same time, Miner Hosting began selling Bitcoin miners to customers around the world under the d.b.a. "Miner Source" and through a now defunct website located at www.minersource.com.

A. **The Sale**

10. Amongst the products Miner Hosting sold were a line of miners known as the "Prosperos," which were produced by a Chinese manufacturer named Black Arrow. In the fall of 2013, Miner Hosting began taking presale orders for the Prospero X3, which was scheduled to release in May of 2014.

11. In April 2014, Mr. Carson met Plaintiffs at a tradeshow in Canada and presold them 43 X3 Prosperos for a sum of $200,000 U.S. The parties memorialized their agreement by executing a formal invoice dated April 17, 2014 (the "**Invoice**"). (*See* A copy of the Invoice incorporated as **Exhibit 1**.) The Invoice's $200,000 sale price covers 42 miners at $4,762 apiece, the 43rd was included without cost to induce a full "upfront" payment.

12. Plaintiffs paid the Invoice's balance a day later, on April 18, 2014, by transmitting $200,000 in Bitcoin to an address specified in the Invoice (the "**Payment**") (*See* Transaction

Analysis, April 18, 2014, incorporated as **Exhibit 2**); (*cf.* Ex. 1 *and* Ex. 2.) Each Plaintiff contributed $100,000 to the $200,000 purchase price.

13.     Explicit terms recorded on the face of the Invoice entitle Plaintiffs to a full refund of their Payment if their X3s are not delivered by May 2014 (the "**Refund**"). (*See* Ex. 1.)

14.     An investigation conducted in support of this Complaint revealed Miner Hosting entered into several similar presale arrangements with customers around the world during the fall of 2013 and spring of 2014. In each case, Miner Hosting presold X3s, accepted an upfront payment and promised the customer a refund if their units were not delivered by May 2014.

15.     In anticipation of receiving their X3s, Plaintiffs entered into a hosting agreement with the Great North Data Center in Alberta, Canada (the "**GNDC**"), and made a nonrefundable deposit of $18,000 to reserve space for their units.

### B.    The Delay

16.     Due to difficulties in the manufacturing process, Black Arrow failed to release the X3s by May 2014 and put Miner Hosting in default of the Invoice's delivery deadline.

17.     To avoid paying the Refund, Miner Hosting asked Plaintiffs for additional time to deliver their order and promised to compensate Plaintiffs for their delay-related losses.

18.     Relying on Miner Hosting's assurances of additional compensation, Plaintiffs elected not to demand an immediate refund.

19.     Upon information and belief, Miner Hosting thereafter repeated the foregoing process with several similarly situated customers, who likewise agreed to postpone their refund demands based on promises of additional compensation.

20.     In August 2014 Miner Hosting claimed to receive one of Plaintiffs X3s, which it then purportedly installed in the Data Center while it awaited the rest of Plaintiffs' order. The Bitcoin produced by this unit was directed to Plaintiffs and resulted in a profit of 1.73149502 Bitcoin, or approximately $654, between August and November 2014.

### C.    The Partial Delivery

21.     Plaintiffs finally received two X3 shipments from Miner Hosting in November 2014, some five months after they were due. The shipments contained a total of 20 heavily used and damaged X3 miners. Only a couple of the units functioned upon arrival and all 20 of the units, including the functioning ones, required repairs before they could be put to use. The extensive damage to each miner was thoroughly documented by employees at the GNDC.

22.     According to an e-mail from Mr. Salvatore, all 20 of the X3 Plaintiffs' received were inspected and certified by Miner Hosting before they were shipped. Given the nature of the

units' damage, Plaintiffs further suspect the X3s were used by Miner Hosting before they were shipped.

23. Given Miner Hosting's poor performance, Plaintiffs elected to accept and repair the X3s they received at their own cost. Miner hosting was made aware of Plaintiffs' repair efforts and promised to compensate Plaintiffs for any costs they incurred in the process. However, no repair-related reimbursements were ever received.

24. After a good deal of effort, 18 of the 20 units were repaired and producing Bitcoin in the GNDC's facilities by November 17, 2014. The remaining two units were deemed unrepairable.

25. On November 24, 2014, Mr. Ball demanded a full refund of his $100,000 share of the Payment and withdrew from negotiations with Miner Hosting. Mr. Toth continued to dialogue with Miner Hosting until January 2015, when he also demanded a refund.

26. In mid-December 2014, Miner Hosting sent Mr. Toth a shipment of six heavily used Spondoole-Tech SP20 miners ("**SP20s**"). The SP20s were worth substantially less than the X3s described in the invoice ($479 per new SP20 as opposed to $4,762 per new X3) but Mr. Toth nevertheless accepted and made use of the units as partial compensation for his delay-related losses.

27. In January 2015, Miner Hosting declared it would not be delivering any additional X3s as it was deeply in debt to Black Arrow and Black Arrow had "cut off" Miner Hosting's supply of miners. Shortly thereafter, all communications with Miner Hosting ended.

### D.  Rollins Mining & Oregon Mines

28. By January 2015, Miner Hosting owed significant debts to various vendors, like Black Arrow, and a large number of upset customers, like Plaintiffs. Messrs. Carson, Murtha and Salvatore accordingly chose to abandon the company and its debts.

29. Upon information and belief, Mr. Murtha left Miner Hosting and relocated to his hometown in Saint Louis, Missouri.

30. Miner Hosting's other two founders, Messrs. Carson and Salvatore, chose to relocate to the Dalles, Oregon, where they conspired with the principals of co-Defendant Rollins Mining to effectively re-open Miner Hosting under the d.b.a. "Oregon Mines." To this end:

> a.) Messrs. Carson and Murtha transferred a large number of Miner Hosting's hosting clients to Rollins Mining and concealed the true nature of their activities by claiming the customers were merely "referrals" between the two companies;
>
> b.) They similarly moved all of Miner Hosting's equipment and materials from the Data Center in Aurora to Rollins Mining's data center in the Dalles without documenting the exchange in any way; and

      c.)     Messrs. Carson and Salvatore personally relocated to the Dalles where they became officers and employees of Rollins Mining.

31.     As a result of the foregoing transfer, Messrs. Carson and Salvatore were able to retain their hosting customers and assets while avoiding the debts they owed to Plaintiffs, Black Arrow and other sales customers.

32.     At the time, Rollins Mining's principals were aware of Miner Hosting's debts but nevertheless chose to absorb Miner Hosting so they could obtain a pecuniary gain from the resulting expansion of Rollins Mining's operations.

33.     Had Plaintiffs received the 43 X3s they ordered by June 1, 2014, they would have netted 742.37 Bitcoin, approximately $223,696, by the date of this Complaint.

### FIRST CLAIM FOR RELIEF
### (Successor-In-Interest Liability)
### Rollins Mining (d.b.a. Oregon Mines)

34.     Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

35.     Between 2013 and 2014, Miner Hosting incurred substantial liabilities to Plaintiffs, Black Arrow and other sales customers.

36.     To avoid these liabilities, Miner Hosting surreptitiously transferred all of its assets, employees and hosting clients to Rollins Mining and then effectively reopened its hosting business under the d.b.a. "Oregon Mines."

37.     The foregoing transfers represent a *de facto* merger between Rollins Mining and Miner Hosting, and Oregon Mines is likewise a mere continuation of Miner Hosting's business less the debts it owes to Black Arrow, Plaintiffs and similarly situated sales customers.

38.     The foregoing transfers were completed with the knowledge and blessing of Rollins Mining's founders who received a significant pecuniary gain as a result of Miner Hosting's addition to Rollins Mining.

39.     THEREFORE, Plaintiffs are entitled to an order declaring Rollins Mining to be Miner Hosting's legal successor-in-interest and holding Rollins Mining liable for all of Miner Hosting's debts and legal obligations as if it were, in fact, Miner Hosting.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)
### Miner Hosting & Rollins Mining

40. Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

41. On April 17, 2014, Plaintiffs and Miner Hosting executed the Invoice and entered into a binding contract that called upon Miner Hosting to deliver 43 X3s to Plaintiffs by no later than May 2014.

42. Plaintiffs performed all of their contractual obligations when they issued the Payment on April 18, 2014.

43. Miner Hosting thereafter breached the contract on several occasions when it, among other things, failed to deliver the X3s by May 2014 or pay the Refund when it came due and owing.

44. As a result of these breaches, each Plaintiff incurred significant losses.

45. Rollins Mining became Miner Hosting's successor-in-interest when it absorbed all of Miner Hosting's assets, employees and hosting clients for the sole purpose of avoiding Miner Hosting's creditors.

46. THEREFORE, Defendants are liable to Plaintiffs for Miner Hosting's breach of contract in an amount to be determined at trial, but not less than Plaintiffs' actual, consequential and incidental damages, less the value of any partial deliveries or costs saved, plus statutory interest accumulated from the date of breach forward.

## THIRD CLAIM FOR RELIEF
### (Breach of Implied Warranties)
### Miner Hosting & Rollins Mining

47. Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

48. On April 17, 2014, Plaintiffs and Miner Hosting executed the Invoice and entered into a binding contract that called upon Miner Hosting to deliver 43 X3s by no later than May 2014.

49. By operation of Colorado law, the foregoing contract was imbued with several implied warranties including warranties of merchantability and fitness for a particular use.

50. These implied warranties were breached when Miner Hosting, among other things, delivered 20 used and damaged X3 miners in November 2014.

51. As a result of these breaches, Plaintiffs sustained financial losses including, but not limited to, the cost of repairing or replacing the damaged miners.

52. Rollins Mining became Miner Hosting's successor-in-interest when it absorbed all of Miner Hosting's assets, employees and hosting clients for the sole purpose of avoiding Miner Hosting's creditors.

53. THEREFORE, Defendants are liable to Plaintiffs for Miner Hosting's breach of the implied warranties in an amount to be determined at trial, but not less than Plaintiffs' actual, consequential and incidental damages, less any costs saved, plus statutory interest accumulated from the date of breach forward.

### FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### Miner Hosting & Rollins Mining

54. Plaintiffs incorporate all prior allegations and averments as if they were fully set forth below.

55. Miner Hosting received a benefit when it received Plaintiffs' Payment.

56. This benefit came at Plaintiffs' expense.

57. Miner Hosting received the foregoing benefit in a manner that would make it unjust for it to continue to enjoy the benefit without restitution to both Plaintiffs.

58. Rollins Mining became Miner Hosting's successor-in-interest when it absorbed all of Miner Hosting's employees and assets for the sole purpose of avoiding Miner Hosting's creditors.

59. THEREFORE, Defendants are liable to Plaintiffs on the theory of unjust enrichment to Plaintiffs for damages in an amount to be determined at trial but not less than Plaintiffs' $200,000 Payment plus statutory interest accrued from the date of payment forward.

## PRAYER

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in their favor and against each Defendant in the amounts prayed for above, along with any further and additional relief the Court may, in its sole discretion, deem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL MATTERS SO TRIABLE.**

Respectfully submitted this 10th day of February, 2016.

_____
Damon M. Semmens (Reg. No. 37023)

DATE FILED: February 10, 2016 6:53 PM
FILING ID: 2C2E713BDD210
CASE NUMBER: 2016CV30222

# EXHIBIT 1

MINERSOURCE.NET

## INVOICE
#MS000014

573-202-0370
matt@minersource.net

Miner Hosting LLC
3250 Oakland St
Unit D
Aurora, Colorado 80010

Name: Joseph David Toth and Raymond Ball
Address: 7620 Elbow Dr. SW CALGARY AB
City       T2V1K2
PHONE + 888 916 8363
Email: joseph@cavirtex.com

P.O. Number: MS000014
Invoice Number: MS000014
Terms: Payment Upon Receipt
BTC Address: 17nD9xiRAG2JAbN2s25mGwHEGt5zrQBJ6z

| Description | Quantity | Unit Price | Cost |
|---|---|---|---|
| Black Arrow Prospero X3 2th/Sec Bitcoin Miner | 42 | USD$4762 | $ 200,000 |
| *Free X3 if Paid Upfront* | 1 | 0 | $0 |
| | | Subtotal | $200,000 |
| | | Total | $200,000 |

Delivery of Items within the month of May, or full refund can be issued.

Purchase Order is not dependant on hosting agreement, and such agreement would be handled separately. Coinbase.com Spot Price Exchange Rate only for duration of agreement.

Miner Hosting Representative: Matthew Carion  4/17/14
Signature: _mlw_
Client Representative: Joseph Toth
Signature: _Joseph L_   Apr 17 2014
Name: Raymond Ball
Sig: RR

DATE FILED: February 10, 2016 6:53 PM
FILING ID: 2C2E713BDD210
CASE NUMBER: 2016CV30222

# EXHIBIT 2

Home  Charts  Stats  Wallet

# Bitcoin Address

## Summary

| | |
|---|---|
| Address | 17nD9xiRAG2JAbN2s25mGwHEGt5zrQBJ6z |
| Tools | Taint Analysis - Related Tags - Unspent Outputs |

## Transactions

| | |
|---|---|
| No. Transactions | 3 |
| Total Received | 398.4858 BTC |
| Final Balance | 0 BTC |

Request Payment    Donation Button



## Transactions                                                         Filter

5eaa114a5b5362e842a0c6e206508bcdfc99b6ea82…                              2014-04-18 00:19:43

1AYrfFmhaTZbaeDVNs7N2Mo8mCAyns1e4m
16zK7KKtkQbTDMHVjvi6rZZC32yTjmBEAo

-398.4858 BTC

414aa2108a928899d7b3bc96d8af75a3287dd0340…                              2014-04-17 20:28:46

17nD9xiRAG2JAbN2s25mGwHEGt5zrQBJ6z

398.4178 BTC

a809f0d4507a427f188af7a33593a438e74fd41da2e…  2014-04-17 17:18:44

17nD9xiRAG2JAbN2s25mGwHEGt5zrQBJ6z

0.068 BTC